UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOHN C. PRATHER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 09-CV-0393-CVE-TLW |
| | ) |
| **GAIL HEDGECOTH, OSAGE COUNTY** | ) |
| **ASSESSOR'S OFFICE, BILL CAUGHMAN,** | ) |
| **OSAGE COUNTY BOARD OF** | ) |
| **EQUALIZATION, W.B. MCCABE, JOHN** | ) |
| **DOE, JANE DOE, THE OKLAHOMA** | ) |
| **TAX COMMISSION, AND THE STATE** | ) |
| **OF OKLAHOMA,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court are the following motions: Special Appearance and Motion to Dismiss of Named Defendant, Oklahoma Tax Commission (Dkt. # 8), Motion to Dismiss Plaintiff's Complaint on Behalf of Defendant State of Oklahoma and Brief in Support (Dkt. # 10), and Defendants Hedgecoth, Caughman, and McCabe's Motion to Dismiss and Brief in Support (Dkt. # 21). Defendants argue that the Court lacks jurisdiction over plaintiff's claims concerning an increase in his property taxes.

**I.**

Plaintiff John C. Prather is a resident of Osage County, Oklahoma (the County) and alleges that he owns real property that is subject to property tax imposed by the County. He claims that he received notice that his property taxes would be increasing in 2009 and filed an informal protest with the Osage County Assessor, Gail Hedgecoth (Hedgecoth or the Assessor), opposing any tax

increase.[1] He claims that, during an informal telephone appeal, an employee of the Osage County Assessor's Office, Mike Harris, informed Prather that his property taxes increased due to a rise in property values. Dkt. # 1, at 7. Prather allegedly responded that "the United States and Oklahoma are in the midst the [sic] biggest recession since the great depression and that housing prices had actually gone down by 15% . . . ." Id. Five days later, Prather received a letter confirming that the property tax increase was final. Prather requested additional documentation from the Assessor concerning the tax increase, and he alleges that he received some, but not all, of the documents he requested. He claims that the documents put him on notice of "unusual accounting practices" related to taxation of a cement block barn on Prather's property. Id. at 8.

Prather asked the Assessor to send someone to look at the cement block barn and reassess any property taxes imposed for the value of the barn. The Assessor send a field agent, Bill Caughman, to inspect the barn and take measurements. Prather disagreed with Caughman's use of a cloth tape measure and claimed that Caughman's measurements were 3 inches longer than his own measurements with a steel tape measure. Id. Caughman began measuring structures on Prather's property other than the cement block barn. Prather asked Caughman to leave because he believed that Caughman's conduct exceeded the scope of his request for reassessment of the cement block barn and was a waste of time, and Caughman left Prather's property. Prather spoke to Hedgecoth on May 12, 2009 and claims that Hedgecoth became angry with Prather because he would not allow Caughman to complete his work at Prather's property. Id. at 9.

---

[1]   Although not stated in the complaint, plaintiff states in a separate filing that his property taxes increased by $16 from 2008 to 2009. See Dkt. # 22, at 15.

Prather filed a formal appeal of the property tax increase with the Osage County Board of Equalization (the Board), and asked the Board to subpoena documents from the Assessor. The Board scheduled a hearing on Prather's appeal for May 29, 2009 and allowed 20 minutes for the appeal. Id. at 10. Prather claims that the Board did not subpoena the documents he sought and failed to construe the facts in his favor. He also claims that he suffered from a mild stroke during the hearing. However, he claims that this had no effect on the outcome of the appeal, because the appeal was a "sham" and the Board had predetermined that his appeal would be denied. Id. at 11-12. Prather states that the Board ordered the Assessor to remeasure all of the buildings on Prather's property and this exceeded the scope of the Board's authority.

On June 2, 2009, Caughman called Prather to set up a time to measure the buildings on Prather's property, and Prather denied Caughman's "request" to enter his property. Id. at 12. He also delivered notice to the Assessor and the Board that he would be filing a lawsuit contesting the increase in his property taxes. On June 4, 2009, Caughman and another field agent went to Prather's property accompanied by an Osage County Sheriff's deputy, and informed Prather that the Board commanded them to enter the property and measure all buildings. Prather notified Caughman that he had filed a lawsuit and he refused to allow Caughman or the field agent onto his property. Caughman and the field agent left without measuring the buildings on Prather's property. The Board told Prather that a decision on his appeal would be announced at a hearing on June 9, 2009, and he received a copy of the written order confirming the property tax increase on June 12, 2009. The written order stated that Prather did not grant the Board permission to enter his property, and the property tax increase imposed by the Assessor was enforceable.

Prather filed this case on June 22, 2009, appealing the property taxes imposed by the Assessor and asserting numerous state law claims against Hedgecoth, Caughman, the Oklahoma Tax Commission, the State of Oklahoma, and W.B. McCabe.[2] Construing Prather's pro se complaint broadly, he could also be alleging claims under 42 U.S.C. § 1983 for violation of his equal protection and due process rights and conspiracy to violate his civil rights, violations of the Oklahoma Administrate Procedures Act, and tort claims of invasion of privacy, intentional infliction of emotional distress, fraud, and negligence. On June 23, 2009, Prather filed the same claims against the same defendants in Osage County District Court, Oklahoma.

## II.

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as

---

[2] Plaintiff alleges that McCabe is the "head" of the Board and presided over the hearing of plaintiff's appeal. Dkt. # 1, at 11.

4

to the existence of subject matter jurisdiction. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applied to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, the United States Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado, 493 F.3d at 1215; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without

supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants argue that the Court lacks subject matter jurisdiction over the case and plaintiff has failed to state a claim. Defendants Hedgecoth, Caughman, and McCabe argue that plaintiff's claims are barred by the Tax Injunction Act, 28 U.S.C. § 1341 (TIA), and State of Oklahoma (the State) and the Oklahoma Tax Commission (OTC) argue that they have sovereign immunity from plaintiff's claims. Plaintiff responds that he has adequately alleged claims against defendants and the Court has federal question jurisdiction over this case. However, he seems to concede that his appeal of the Board's decision is within the exclusive jurisdiction of the Oklahoma courts, and he may have to proceed with that part of his case in state court. Dkt. # 22, at 6.

### A.

Hedgecoth, Caughman and McCabe argue that plaintiff's claims concern the assessment and collection of a state tax, and the Court lacks jurisdiction to hear such claims. Plaintiff responds that claims for intentional violations of state and federal law do not fall within the TIA, and the Court should exercise federal question jurisdiction over this case. He also suggests that the Court has jurisdiction over the case, because plaintiff is a member of an Indian tribe.[3] Dkt. # 22, at 6.

Under the TIA, a federal court may not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the

---

[3] The Tenth Circuit has rejected this argument and plaintiff's status as a member of an Indian tribe is not relevant to the Court's subject matter jurisdiction over his claims. Brooks v. Nance, 801 F.2d 1237, 1239-40 (10th Cir. 1986) (the plaintiff's membership with Indian tribe did not create an exception to operation of the TIA and claims challenging imposition of an Oklahoma sales tax by individual tribal member were barred by TIA).

courts of such State. 28 U.S.C. § 1341. The TIA is "read as a 'broad jurisdictional barrier' and is first and foremost a vehicle 'to limit dramatically federal district court jurisdiction.'" Hill v. Kemp, 478 F.3d 1236, 1246 (10th Cir. 2007) (quoting Arkansas v. Farm Credit Servs of Central Arkansas, 520 U.S. 821, 826 (1997)). The TIA creates a jurisdictional bar when the relief sought would "reduce the flow of state tax revenue." Oklahoma ex rel. Oklahoma Tax Commission v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1112 (10th Cir. 2006). The TIA forbids federal district courts from issuing injunctive and declaratory relief, as well as monetary relief associated with the imposition of a state tax. See Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 587-88 (1995). In addition to claims directly challenging the imposition of a state tax, the TIA also divests federal district courts of jurisdiction to hear claims challenging state taxation procedures if the state courts provide a forum for the aggrieved party. Marcus v. Kansas Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). A plaintiff may not avoid the jurisdictional limitation created by the TIA by alleging claims under § 1983. Brooks, 801 F.2d at 1239.

For the TIA to apply, the Court must find that the plaintiff is challenging a state tax or taxation procedure and he has a "plain, speedy, and efficient" remedy in state court. Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503 (1981); Amos v. Glynn County Board of Tax Assessors, 347 F.3d 1249, 1255 (11th Cir. 2003). It is clear that plaintiff is contesting payment of a state tax and he does not raise any argument that property taxes are not a tax for the purpose of the TIA. See Scott Air Force Base Properties, LLC v. County of St. Clair, Illinois, 548 F.3d 516 (7th Cir. 2008) (TIA applicable to claims challenging any state, county, or municipal tax, including property taxes assessed by a county). Defendants have also shown that plaintiff may raise his claims in opposition to the property tax assessment in state court and, in fact, the state courts are the exclusive forum for

7

such claims. Under Oklahoma law, a taxpayer may appeal the order of a county board of equalization to the district court of the same county and, if the district court does not rule in his favor, may appeal the district court's judgment to the Oklahoma Supreme Court. OKLA. STAT. tit. 68, § 2880.1. The appeal process created by § 2880.1 "shall be the sole method by which assessments or equalizations shall be corrected or taxes abated," and the state district court must give appeals of tax assessments precedence over other civil cases. OKLA. STAT. tit. 68, § 2885. Thus, the state courts provide a plain, speedy, and efficient remedy as required by the TIA, and the TIA bars all or many of plaintiff's claims.

Plaintiff argues that it would be unfair to apply the TIA when he has alleged that defendants intentionally violated his constitutional rights, and the TIA does not bar his claims due to his allegations of intentional misconduct. However, the Tenth Circuit has clearly held that § 1983 claims challenging a state tax or taxation procedure fall within the TIA. Brooks, 801 F.2d at 1239. While plaintiff may view the TIA as unfair, it serves an important purpose by preventing parties from involving federal courts in internal state affairs and it is intended to be a significant limitation on the jurisdiction of federal district courts. Marcus, 170 F.3d 1305, 1308. The nature of plaintiff's claims as intentional constitutional violations or torts, instead of negligence-based claims, does not save his claims from the jurisdictional bar created by the TIA.[4]

Plaintiff's appeal of the Board's decision is within the exclusive jurisdiction of the Oklahoma courts and is barred by the TIA, and he must pursue his appeal in Osage County District Court. To the extent that plaintiff asks the Court to set aside the tax increase, his claims under state and federal

---

[4] The Court notes that even plaintiff's negligence claim is phrased as a claim of "intentional negligence with malice," and is not a true negligence claim. Dkt. # 1, at 6.

8

law must be litigated in state court. This encompasses plaintiff's claims under § 1983 based on alleged constitutional violations arising out of the tax increase and appeal process. Plaintiff's allegations of fraud and misconduct in the appeal process can be raised in state court in a direct appeal of the Board's decision, and he may not use these allegations to bypass the TIA. Due to the dismissal of plaintiff's § 1983 claims, the Court lacks jurisdiction over plaintiff's case and it not necessary to determine whether any other specific claims fall under the TIA. Plaintiff filed this case in federal court based on federal question jurisdiction, and there is no basis for the Court to exercise federal question jurisdiction over this case without plaintiff's § 1983 claims.[5] Plaintiff cites 28 U.S.C. § 1360 as a basis for jurisdiction, see Dkt. # 1, at 2, but this statute is not an independent basis for federal jurisdiction. It merely grants certain states, excluding Oklahoma, jurisdiction over claims involving Indians and arising in Indian county, but it does not create federal subject matter jurisdiction. See Ponca Tribe of Indians of Oklahoma v. Contintental Carbon Co., 439 F. Supp. 2d 1171, 1174 (W.D. Okla. 2006). Plaintiff also cites other federal statutes and acts of Congress relating to Indians, but none of these statutes provides an independent basis for federal subject matter jurisdiction. Dkt. # 1, at 2. The Court finds that it lacks subject matter jurisdiction over this case, and the case should be dismissed.[6]

---

[5] Assuming that plaintiff has state law claims that are not barred by the TIA, the Court lacks an independent basis to exercise subject matter jurisdiction over these claims and would decline to exercise supplemental jurisdiction over such claims. See 28 U.S.C. § 1367(c).

[6] The Court lacks subject matter jurisdiction over the case, and declines to consider defendants' arguments that plaintiff has not stated a claim upon which relief can be granted.

**B.**

The OTC and the State argue that they have sovereign immunity from plaintiff's claims.[7] Plaintiff responds that the OTC and the State violated his constitutional rights, and are not entitled to sovereign immunity. Dkt. # 16, at 5.

The Eleventh Amendment to the United States Constitution states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. CONST. amend. XI. It bars a citizen or non-citizen of a state from filing a lawsuit against the state or an arm of the state in federal court. Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Authority, 577 F.3d 1255, 1258 (10th Cir. 2009); Tarrant Regional Water Dist. v. Sevanoaks, 545 F.3d 906, 911 (10th Cir. 2008). A state or arm of the state must assert sovereign immunity as a defense, and a state may waive its immunity from suit. Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007). A state may waive its immunity by voluntarily becoming a party to a case. See Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 619 (2002). Congress may also abrogate a state's immunity from suit "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 726 (2003).

In this case, neither the OTC nor the State has waived its immunity from suit and plaintiff may not proceed with his claims against them. The OTC and the State have asserted Eleventh

---

[7] Although plaintiff's claims against the OTC and the State are barred by the TIA, these defendants did not raise the TIA as a defense and, instead, they assert that the OTC and State have sovereign immunity from plaintiff's claims. The Court will consider this issue separately, even though plaintiff is precluded by the TIA from litigating his federal claims against the OTC and the TIA.

Amendment immunity as a defense to all of plaintiff's claims, and plaintiff has made no attempt to show that the OTC or the State has waived its Eleventh Amendment immunity or that Congress has abrogated the OTC's or the State's immunity from plaintiff's claims. To the extent that plaintiff is asserting a § 1983 against these defendants, Congress did not abrogate a state's immunity when it enacted § 1983, and a state or arm of the state has Eleventh Amendment immunity from a § 1983 claim in federal court. Quern v. Jordan, 440 U.S. 332, 339-41 (1979). Even if plaintiff's claims against the OTC and the State were not barred by the TIA, plaintiff would also be precluded by the Eleventh Amendment from litigating his claims against the OTC and the State in federal court.

**IT IS THEREFORE ORDERED** that the Special Appearance and Motion to Dismiss of Named Defendant, Oklahoma Tax Commission (Dkt. # 8), Motion to Dismiss Plaintiff's Complaint on Behalf of Defendant State of Oklahoma and Brief in Support (Dkt. # 10), and Defendants Hedgecoth, Caughman, and McCabe's Motion to Dismiss and Brief in Support (Dkt. # 21) are **granted**. A separate judgment of dismissal is entered herewith.

**DATED** this 26th day of October, 2009.

*[Signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT